FILED'08 APR 11 0747 USDC-ORP

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | | |
|---|---|---|
| D.H.M. and M.D., | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Case No.  06-143-KI |
| | ) | |
| vs. | ) | OPINION AND ORDER |
| | ) | |
| OREGON YOUTH AUTHORITY, a | ) | |
| subdivision of the State of Oregon, GARY | ) | |
| LAWHEAD, in his individual capacity, | ) | |
| JOHN DOE 1, in his individual capacity, | ) | |
| HAVAN JONES, in his individual capacity, | ) | |
| JOHN DOE 2, in his individual capacity, | ) | |
| JOHN DOE 3, in his individual capacity, | ) | |
| FLOYD JOSEPH MESTETH, and JOHN | ) | |
| POWELL, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Michelle R. Burrows
618 NW Glisan, Suite 203
Portland, Oregon  97209

Page 1 - OPINION AND ORDER

Peter B. Tiemann
490 Main Street
Placerville, California  95667

Erin K. Olson
2905 NE Broadway
Portland, Oregon  97232-1760

      Attorneys for Plaintiffs

James S. Smith
David L. Kramer
State of Oregon
Department of Justice, Trial Division
1162 Court Street, N.E.
Salem, Oregon  97301-4096

Robert A. Petersen
528 Cottage Street, N.E., Suite 160
Salem, Oregon  97301

      Attorneys for Defendants

KING, Judge:

This case concerns the tragic events that occurred when defendant Michael Boyles

sexually abused several youths under the jurisdiction of the Oregon Youth Authority ("OYA")

during the time Boyles was assigned as the youths' Parole and Probation Officer.  Boyles is now

serving a prison term after conviction for these acts.  Several youths filed related cases and have

reached settlements.  DHM is proceeding to trial.  He sued the State of Oregon, the OYA, and

several state employees in addition to Boyles:  Floyd Mesteth, Havan Jones, Gary Lawhead, and

John Powell.  Before the court is Defendant Mesteth's Motion for Summary Judgment (#243)

and Defendants Lawhead, Powell, and Jones' Motions for Summary Judgment (#252 and #278).

The State and the OYA do not join any of these motions so none of the rulings below apply to

them. For the reasons below, I deny the motions except to dismiss the Oregon Tort Claims Act ("OTCA") claim alleged against these four defendants for negligent supervision.

## MOTIONS TO STRIKE

Mesteth moves to strike all or part of the Declaration of Michelle Burrows, DHM's counsel. Mesteth argues that Burrows' declaration presents facts which, if DHM's theories to toll the statute of limitations are relevant, make Burrows a witness in the case. Mesteth characterizes the declaration as stating who knew what and when regarding professional representation of DHM. Further, Mesteth contends that as a material witness, Burrows has an actual conflict of interest because Mesteth intends to take the position that any delay was not because of his actions but was because of the negligence of DHM's prior counsel. If the court refuses to strike the entire declaration, Mesteth moves to strike several paragraphs for various reasons.

Burrows argues that she is not violating Rule 3.7 of the Code of Professional Responsibility because her disqualification would work a substantial hardship on her client, she was not called as a witness by opposing counsel, and her testimony will not be prejudicial to her client. Burrows also disputes the arguments Mesteth puts forth concerning the individual paragraphs. In particular, she argues that hearsay in an affidavit is acceptable in summary judgment as long as the content of the evidence can be presented in an admissible form at trial. She claims that the evidence to which Mesteth objects could be presented at trial through the testimony of DHM's parents, the District Attorney, and three expert medical witnesses.

Much of the information in Burrows' declaration duplicates information contained in the declarations of DHM, his mother, and Dr. Hegyvary. The rest of the information is not relevant

to the analysis below.  Because I do not rely on information in Burrows' declaration, I moot the motion to strike it.

Defendants move to strike the Oregon Department of Justice Final Investigation ("SAAG") Report from DHM's response to summary judgment.  The SAAG Report is an investigation of the matter performed by an outside law firm at the request of OYA and later made public.  Lawhead, Powell, and Jones argue that the SAAG Report is hearsay because it is offered to prove the truth of the matters discussed within it.  These defendants note that OYA, and not the individual defendants, made the report public so the report cannot be a party-opponent admission attributed to them.

I agree that the SAAG Report is not a party-opponent admission of the individual defendants and the parties do not discuss other hearsay exceptions.  In the analysis below, however, the information in the SAAG Report is not relevant to the decision.  Thus, I moot the motion.

## FACTS

DHM was born with fetal alcohol effect and was adopted at 22 months.  In addition, he has been diagnosed with failure to thrive, severe ADHD, oppositional defiance disorder, depression, bipolar disorder, suicidal ideation with his first suicide attempts at age 10 and 12, post traumatic stress disorder which more likely than not was directly caused by Boyles' sex abuse, and cognitive impairments.  DHM has attended specialized classes in the public school system, specialized private schools, a therapeutic day-treatment program, and several residential facilities for children with mental illness, behavior disorders, and learning disabilities.  He has

been in some form of state custody since he was 13 years old but has never had a guardian appointed over him since turning 18 years.

DHM was a ward of the OYA from March 28, 2001 through February 8, 2002. Boyles was his Juvenile Parole and Probation Officer from April 9, 2001 to February 8, 2002. Boyles sexually abused DHM over a period of about six months, beginning when DHM was 17 and ending with the last sexual contact in October 2002.

DHM thought that Boyles had a great deal of power and might even be able to kill DHM. Boyles threatened DHM with jail and threatened to post DHM's picture around the city telling people all the bad things he had done. When DHM left Boyles' house, he was afraid that Boyles would have the police arrest him and put him in jail. After Boyles was arrested, he and DHM were in jail at the same time. DHM saw Boyles, who began to make fun of DHM. DHM thought he had to fight Boyles or the other inmates would attack DHM. DHM beat up Boyles and was disciplined. DHM is currently afraid that if he gets into trouble again, Boyles will be able to make the inmates and guards hurt him. Even though Boyles is serving a long prison term, DHM still believes that Boyles will have someone come and hurt or arrest him.

After moving out of Boyles' house in 2002, DHM lived on the streets at times and used methamphetamine. He also lived for about two years with his girlfriend at her mother's house.

DHM's father convinced him to go to the police with Randy Vogt, his first attorney. DHM knew that Vogt wanted to file a lawsuit but never really knew what was happening. DHM only met Kelly Clark, his second attorney, once and did not know that he resigned.

At the time of his deposition on October 30, 2007, DHM was 23 years old, lived alone, and earned $12 per hour working about 30 hours a week at his father's custom window and door

shop. DHM describes himself as generally having difficulty trusting people as a result of Boyles'

abuse.

DHM filed four complaints–one which he dismissed and three associated with this action:

| Document | Date & Place of Filing | Defendants | Counsel | Resolution |
|---|---|---|---|---|
| Complaint-USDC | 2-24-04 US District Court for the District of Oregon ("USDC") | OYA State Boyles | Randy Vogt | Voluntary dismissal without prejudice |
| Complaint-Mult. | 4-30-04 Multnomah County Circuit Court | OYA State Boyles | Randy Vogt | Superseded by First Amended Complaint on 1-30-06 |
| First Amended Complaint | 1-30-06 Multnomah County Circuit Court | OYA State Lawhead Jones John Does 1-3 | Kelly Clark | Removed to USDC 2-1-06 and superseded by Second Amended Complaint 7-31-07 |
| Second Amended Complaint | 7-31-07 US District Court for the District of Oregon | OYA State Boyles Lawhead Jones Powell Mesteth | Michelle Burrows | Currently at issue |

**LEGAL STANDARDS**

Summary judgment is appropriate when there is no genuine issue as to any material fact

and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). The

initial burden is on the moving party to point out the absence of any genuine issue of material

fact. Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate

through the production of probative evidence that there remains an issue of fact to be tried.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). On a motion for summary judgment, the

evidence is viewed in the light most favorable to the nonmoving party. Universal Health

Services, Inc. v. Thompson, 363 F.3d 1013, 1019 (9th Cir. 2004).

## DISCUSSION

I.      Calculation of Limitations Dates Prior to Application of Estoppel, Tolling or Relation

Back Doctrines

        In the Opinion and Order dated March 14, 2007, I made several rulings concerning what

law to apply to determine when claims accrued and which statute of limitations would be applied

to other plaintiffs' claims. I will now apply those rulings to DHM's situation.

        For the § 1983 and § 1985[1] claims, DHM's claim accrued at the last time he was sexually

abused, October 2002.[2] The two year limitations period ran in October 2004.

        DHM's OTCA claim also accrued in October 2002. The two year limitations period ran

in October 2004.

        DHM filed the Complaint-Mult., which was later removed to this court, on April 30,

2004, within the limitations period. Because Complaint-Mult. names OYA and the State, all

claims against them are timely filed.

        Lawhead and Jones were not named until the First Amended Complaint, filed on

January 30, 2006. Powell and Mesteth were not named until the Second Amended Complaint,

---

        [1] I do not believe that the court or the parties have discussed the appropriate statute of
limitations for a § 1985 claim but, like § 1983, it is borrowed from the state's limitation for
personal injury. Taylor v. Regents of University of California, 993 F.2d 710, 711 (9th Cir. 1993).

        [2] Because the difference does not affect the analysis, defendants are not quibbling about
the fact that DHM left state custody before this date because he had turned 18 years.

filed on July 31, 2007. Thus, the claims against these four individual defendants are untimely unless one of the estoppel, tolling, or relation back doctrines saves the claims.

II.    Equitable Estoppel

Defendants note that DHM filed the Complaint-Mult. 18 months after the last date of abuse by Boyles, and thus within the statute of limitations. They argue that the notion of a "reasonable time to file" after the threats supporting equitable estoppel are removed is only relevant if the plaintiff missed the statute of limitations. Because DHM filed in state court within the statute of limitations, defendants argue that equitable estoppel should not apply to the OTCA claims because neither fear of Boyles nor any other reason prevented DHM from filing Complaint-Mult. in a timely fashion.

DHM notes that the end date for equitable estoppel based on Boyles' threats and DHM's fear of retribution is the date he filed his previous action in federal court–February 26, 2004. He then adds a reasonable time of two years to that date to get to February 26, 2006. DHM contends that he is entitled to equitable estoppel because the conduct Boyles subjected him to was at least as egregious as the other plaintiffs in the related actions. DHM also notes that he filed the first action only eleven days after Boyles was arrested. He claims this is strong evidence that he was previously intimidated by Boyles' threats of retribution.

When analyzing the related plaintiffs' claims, I decided equitable estoppel could apply based on Boyles' threats to the plaintiffs. I relied on M.N.O. v. Magana, Civ. Nos. 03-6393-TC, 04-1021-TC, 04-6017-TC, 04-6018-TC, 04-6183-TC, 04-6443-TC, 2006 WL 559214 (D. Or. Mar. 6, 2006), in which several women sued the City of Eugene for the acts of two police officers who used their positions of authority to sexually assault the women. The officers

directly threatened physical harm to keep some of the women from reporting the misconduct.

The court held that equitable estoppel was available for both § 1983 claims and OTCA claims if

the plaintiff could demonstrate that:

> (1) the defendant made specific promises, threats or inducements that prevented
> the plaintiff from filing suit; (2) those promises, threats or inducements actually
> caused the plaintiff to forbear filing the lawsuit; (3) the forbearance was
> reasonable; and (4) the plaintiff filed suit within a reasonable time after
> termination of the conduct causing such forbearance.

Id. at *2.

DHM differs from the related plaintiffs because DHM filed Complaint-Mult. five or six

months before the statute of limitations ran. All of the other plaintiffs missed the statute of

limitations because they were afraid that Boyles would have them jailed. DHM overcame his

fear of Boyles and filed on time. If he did delay in filing this case, the delay did not make the

filing untimely. Consequently, I agree with defendants that the doctrine of equitable estoppel

should not apply to DHM's claims. I also acknowledge defendants' argument concerning

applying equitable estoppel to a § 1983 claim based on the conduct of someone other than the

defendant. There is no need to address this issue in light of my conclusion that DHM cannot rely

on equitable estoppel.

III.    Equitable Tolling

DHM contends that his OTCA and § 1983 claims are both timely filed under the doctrine

of equitable tolling because extraordinary circumstances beyond his control prohibited him from

obtaining vital information bearing on the existence of his claims against defendants other than

Boyles. DHM claims that under the OTCA, he could not name defendants other than Boyles

individually because the others were acting within the course and scope of their employment.

DHM also notes his severely impaired mental and emotional state; the fact that Boyles removed him from all his medications and then ejected DHM from Boyles' home to a life on the streets; prior counsel's abrupt resignation from the case; defense counsel's request to delay moving for leave to file the Second Amended Complaint pending the disposition of pending motions for summary judgment in the related cases and the anticipated mediation; and the delay until January 2007 of the SAAG Report which detailed conduct of the individual defendants who supervised Boyles.

Mesteth argues that Oregon law does not employ the equitable tolling doctrine. He claims that all cases cited by DHM concern federal statutes and federal statutes of limitations. Mesteth also argues that the statute of limitations on claims alleged against him should not be tolled based on Boyles' conduct. Mesteth notes that I previously ruled that there was no evidence that the supervisors' conduct was intended to delay the related plaintiffs from bringing their claims or that those plaintiffs were induced to delay because of the conduct.

Lawhead, Powell, and Jones further argue that DHM has not put forward specific facts that his mental condition prevented him from sharing enough information with counsel to allege the claims against them. All defendants note that any colloquy concerning the time to file the Second Amended Complaint, as well as the resignation of prior plaintiff's counsel, occurred well after the statute of limitations had run and is consequently irrelevant. Likewise, the SAAG Report's authors were not yet retained when the statute of limitations ran. Thus, defendants contend that equitable tolling does not apply.

Equitable tolling permits a plaintiff to avoid the bar of the statute of limitations if despite the exercise of all due diligence he is unable to obtain vital information bearing on the existence

of his claim.  Shropshear v. Corporation Counsel of City of Chicago, 275 F.3d 593, 595 (7th Cir. 2001).  Because § 1983 does not contain a limitations period, the court adopts the state's statute of limitations for personal injury actions.  Wilson v. Garcia, 471 U.S. 261, 276, 105 S. Ct. 1938 (1985).  The "closely related questions of tolling and application" also are governed by state law. Id. at 268-69.

      I was unable to locate any Oregon cases applying equitable tolling.  DHM relies only on cases with federal statute of limitations or § 1983 cases applying tolling law from other states. See, e.g., Alvarez-Machain v. United States, 107 F.3d 696, 701 (9th Cir. 1996) (equitable tolling is available in suits against the United States absent evidence that Congress intended the contrary), cert. denied, 522 U.S. 814 (1997); Shropshear, 275 F.3d 593 (applying Illinois law to a § 1983 claim); Ogle v. Stewart, 230 Fed. Appx. 646, 2007 WL 465670 (9th Cir. 2007) (applying Arizona law to a § 1983 claim).  Thus, I have no precedent showing that equitable tolling could apply to these claims under any circumstances.

      Addressing DHM's reasons for seeking equitable tolling, I also agree with defendants that the events concerning prior counsel's resignation, requests to delay filing the Second Amended Complaint, and release of the SAAG Report occurred well after the statute of limitations ran in October 2004 and do not provide a basis for equitable tolling.  DHM's mental health issues are more appropriately addressed under the statute which tolls for insanity, discussed below.  That statute is a clear indication of how the legislature wanted to address how mental illness affects the timeliness of a complaint.

      In summary, I decline to apply equitable tolling to DHM's claims.

IV.    Relation Back

On October 4, 2007, I granted DHM's Motion to Substitute Parties and allowed the
substitution of Powell and Mesteth for two of the John Does.  In the analysis, I also concluded:
(1) Federal Rule of Civil Procedure 15(c) controlled the relation back analysis; (2) Powell and
Mesteth had sufficient notice to satisfy Rule 15 based on being named defendants in one of the
related cases and testifying at Boyles' criminal trial; (3) Powell and Mesteth received this
informal notice within 120 days of the filing of the First Amended Complaint.  I held that the
Second Amended Complaint related back to the filing date of the First Amended Complaint.  I
also gave DHM leave to try to relate the Second Amended Complaint back to the filing date of
the Complaint-Mult.

Since Mesteth was not a party prior to my granting of DHM's motion to substitute him
for one of the John Does, he notes that he was not heard on the relation back issue.  Mesteth
argues that the relation back doctrine does not apply because DHM did not make a mistake in
failing to name Mesteth.  According to Mesteth, being unable to identify a defendant is not a
mistake as defined by the case law interpreting Rule 15.  Mesteth also contends that he did not
receive notice or, alternatively, received notice after the statute of limitations expired, and that
there was no notice by sharing of attorneys or identity of interest prior to October 12, 2005
because that was the first time he was named as a defendant in any of the related cases.

Lawhead, Jones, and Powell respectfully argue with my decision to apply Federal Rule of
Civil Procedure 15(c) rather than Oregon Rule of Civil Procedure 23C.  But they contend that
under either state or federal law, the notice and mistake requirements are not present.  These
defendants distinguish Phillips v. Multnomah County, CV05-105-CL, 2007 WL 915173 (D. Or.

Mar. 23, 2007), by noting that the substitution after the limitations period was for a John Doe named before the limitations period expired. Here, Complaint-Mult. does not contain any John Doe defendants.

DHM argues that the court's relation back argument is sound and that the Second Amended Complaint should relate back to the filing of Complaint-Mult. on April 30, 2004. He argues that it was impossible until the January 2007 release of the SAAG Report, to determine how these defendants were involved. DHM relies on cases from other circuits which include the naming of unknown John Does as a mistake under Rule 15. See Goodman v. Praxair, Inc., 494 F.3d 458, 470-73 (4th Cir. 2007) (using a broad definition of "mistake," although citing the 5th, 7th, and 11th Circuits and acknowledging that the majority of courts agree that Rule 15(c)(3) does not permit substitution for "Doe" defendants after the limitations period has run). To satisfy the notice requirement, DHM notes that in addition to the criminal trial testimony and being named in a related case, notice may be imputed because of a shared attorney, identity of interest, and because of the State's investigation.

When I first addressed this issue, I did not closely analyze the mistake factor after deciding to apply the federal rule rather than the state rule. Defendants had briefed all Oregon cases concerning mistake and I was not applying that law. I am willing to consider the issue anew.

Ignoring any statutory tolling for insanity, the First Amended Complaint, naming Lawhead and Jones for the first time, and the Second Amended Complaint, naming Powell and Mesteth for the first time, must relate back to the Complaint-Mult. to be considered timely filed. The Complaint-Mult. alleges no claims against any of Boyles' supervisors. The First Amended

Page 13 - OPINION AND ORDER

Complaint alleges claims against supervisors named as John Does and states that it will revise

the names once they are learned.  Relating back to the First Amended Complaint does not make

DHM's claims timely, however, so I will focus my analysis on Complaint-Mult.

Under Rule 15(c), an amendment relates back to an earlier pleading if, among other

requirements, the party "knew or should have known that, but for a mistake concerning the

identity of the proper party, the action would have been brought against the party."

Defendants rely on Louisiana-Pacific Corp. v. Asarco, Inc., 5 F.3d 431 (9th Cir. 1993),

which held that the trial court did not abuse its discretion in refusing under Rule 15(c) to relate

back claims against a corporation, IMP, to claims in the prior complaint alleged against another

corporation, L-Bar.  Plaintiff knew that IMP allegedly caused the damage.  Id. at 434.  But

plaintiff thought it had to sue L-Bar because L-Bar bought IMP's assets after the environmental

damage at issue occurred.  Id. at 433-34.  The court reasoned that the "explanation does not

change the fact that [plaintiff] knew IMP was the party for whose actions it sought indemnity.

There was no mistake of identity, but rather a conscious choice of whom to sue."  Id. at 434.

Asarco is similar to DHM's decision when filing Complaint-Mult.  In it, DHM made a

conscious choice not to sue any of the supervisors, even under pseudonyms.  This is true even

though DHM alleged a negligence claim against the State and averred that Boyles' managers,

overseers, supervisors and co-workers knew or should have known about Boyles' acts of sexual

misconduct.  Thus, under Rule 15(c), as interpreted in Asarco, I conclude that DHM did not

make a mistake concerning the identity of the proper party.

The wording of ORCP 23 concerning mistake is the same as in Rule 15(c).  Relation back

is allowed if "the plaintiff misnamed but correctly identified the intended defendant."  Krauel v.

Bykers Corp., 173 Or. App. 336, 340, 21 P.3d 1124 (2001) (not relating back when original

complaint named building owner but plaintiff sought to substitute the operator of the business,

which was a completely unrelated entity). Here, Complaint-Mult. does not allege any claims

against the supervisors. Thus, in that complaint, DHM did not misname but correctly identify the

supervisors as intended defendants. He did not make a mistake, as defined under ORCP 23,

concerning the identity of the proper party.

Under the case law interpreting both rules of civil procedure, DHM did not make a

mistake so the First Amended and Second Amended Complaints do not relate back to

Complaint-Mult. There is no need for me to determine if the federal or state rule should apply

because the result is the same under either. Thus, I change my prior ruling.

V.    Statutory Tolling for Insanity

DHM contends that the statute of limitations for the § 1983 claims[3] should be tolled

under ORS 12.160 for his insanity. He claims to suffer from severe, debilitating mental illness

and cognitive disorders arising from fetal alcohol syndrome, ADHD, and resulting neurological

deficits, with the disability continuing to this day. Under the statute, DHM claims the maximum

five year tolling period, allowing him to timely file § 1983 claims until October 2009 (assuming

the last date of sexual abuse by Boyles was in October 2002). Concerning whether he qualifies

for insanity tolling under ORS 12.160, DHM contends that factual issues make this

determination inappropriate for summary judgment.

Defendants argue several reasons why the statute of limitations should not be tolled for

insanity. They claim there is no evidence that DHM was insane at the time of the abuse and

---

[3] I concluded in the March 14, 2007 Opinion and Order that the tolling provisions in
ORS 12.160 do not apply to OTCA claims.

argue DHM's sanity is demonstrated because he was aware at the time he was abused that Boyles

harmed him and it was wrong. Defendants note that DHM filed complaints, testified in criminal

and civil matters, met with police investigators, signed medical release forms, and was presented

by counsel as competent throughout this proceeding, all without the appointment of a guardian ad

litem. Defendants also note that DHM filed an action within the statute of limitations which

obviates any issue as to his sanity.

Alternatively, Mesteth contends that whatever DHM's mental state was at the time the

claim arose, the statute of limitations expired one year after he became sane, which at the latest

was when he filed the Complaint-USDC in February 2004.

The statute states:

> If, at the time the cause of action accrues, any person entitled to bring an
> action . . . , is within the age of 18 years or insane, the time of such disability shall
> not be a part of the time limited for the commencement of the action; but the
> period within which the action shall be brought shall not be extended more than
> five years by any such disability, nor shall it be extended in any case longer than
> one year after such disability ceases.

ORS 12.160.

For this statute to toll the statute of limitations, "plaintiff's mental condition must have

been such as to have actually barred [him] from knowing" he was harmed. Gaspar v. Village

Missions, 154 Or. App. 286, 292, 961 P.3d 286 (1998) (plaintiff described by her psychologist as

having transitory periods of lucidity found not to be insane under ORS 12.160 because treatment

records show that her understanding of defendant's injurious treatment of her was not transitory,

as evidenced in part by giving informed consent to psychologist to send letter to defendant

confronting him).

Page 16 - OPINION AND ORDER

It is clear from the explanation provided by DHM's mother that he has suffered from serious mental health issues since he was a young child. The recent psychiatric examination by Dr. Csaba Hegyvary shows that his problems were only made worse by the sex abuse. In spite of his disability, DHM knew he was harmed when he filed Complaint-USDC on February 24, 2004. Thus, on that date, he was not insane as defined in the case law. The one year grace period would extend the statute of limitations to February 24, 2005. The Second Amended Complaint, naming Powell and Mesteth, was not filed until over two years later, on July 31, 2007. On the present record, however, I am unable to determine as a matter of law that DHM did not fall back into insanity within the grace period for a sufficient time to extend the statute of limitations enough to make his claims against these defendants timely. The limitations period can be extended as much as five years. The same analysis applies to Jones and Lawhead named in the First Amended Complaint.

This situation is distinguishable from Gaspar because that plaintiff's psychological treatment records were available. The records showed that once plaintiff realized that her pastor had harmed her, she did not waiver from that belief even though her lucidity was described generally as transitory. We do not have DHM's detailed medical history here. His psychiatric diagnoses, treatments including residential placement, and earlier suicide attempts are sufficient to raise a factual issue on whether he was insane during periods which would extend the statute of limitations enough to make the filing of the First and Second Amended Complaints timely. Accordingly, I deny defendants' motions for summary judgment on the § 1983 claims. DHM may present evidence of his insanity at trial.

VI.    Summary

The § 1983 claims against Lawhead, Jones, Powell, and Mesteth will proceed to trial.

The jury will decide if the statute of limitations is tolled for insanity under ORS 12.160, as it

applies to the § 1983 claims. Because tolling for insanity does not apply to the OTCA claims,

and the other arguments were not persuasive, the Fourth Claim for negligent supervision alleged

against Lawhead, Jones, Powell, and Mesteth is untimely. I grant summary judgment and

dismiss this claim.

## CONCLUSION

Defendant Mesteth's Motion for Summary Judgment (#243) and Defendants Lawhead,

Powell, and Jones' Motions for Summary Judgment (#252 and #278) are granted in part and

denied in part.

IT IS SO ORDERED.

Dated this _____ day of April, 2008.

Garr M. King
United States District Judge